**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

JAMES B. KITTERMAN and DIANE
KITTERMAN,

        Plaintiffs,

vs.

COVENTRY HEALTH CARE OF
IOWA, INC.,

        Defendant.

No. C 09-4046-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING REMAINING
QUESTIONS ON REMAND**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *B. The Prior Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *C. Positions Of The Parties On Remaining Issues* . . . . . . . . . . . . . . . . . . 9

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   *A. The Effect Of An SPD* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   *B. The Effect Of A "Faulty" SPD* . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   *C. What "Further Proceedings" Are Required?* . . . . . . . . . . . . . . . . . . 15

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

This judicial review action, pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, is back before me on remand from the Eighth Circuit Court of Appeals "for further proceedings." The underlying dispute was whether the plaintiff insured was required to pay more than the $8,000 identified as the "Out-of-Pocket Maximum" for an individual for treatment from a "Non-Participating Provider." The defendant plan administrator had declined to pay medical expenses totaling almost three times that amount, on the ground that various costs did not "apply" to the "Out-of-Pocket Maximum." I found that the plan administrator's denial of benefits must be reversed and that the insured's claim for payment of all charges in excess of $8,000 must be granted. *Kitterman v. Coventry Health Care of Iowa, Inc.*, 703 F. Supp. 2d 896 (N.D. Iowa 2010). On the plan administrator's appeal, however, the Eighth Circuit Court of Appeals reversed, holding that "Out–of–Pocket Maximum" was specifically defined in the plan as *not* including out-of-network charges above the out-of-network rate, and remanded "for further proceedings." *Kitterman v. Coventry Health Care of Iowa, Inc.*, 632 F.3d 445, 450-51 (8th Cir. 2011). The parties have now submitted briefs on the question of what issues, if any, remain to be resolved on remand.

## I. INTRODUCTION

### A. *Factual Background*

In the fall of 2008, plaintiff Diane Kitterman[1] required treatment for ovarian cancer. Her physician referred her to the Mayo Clinic in Rochester, Minnesota. She was then participating in a health insurance benefit plan (the Plan) administered by Coventry Health Care of Iowa, Inc. (Coventry). Kitterman contacted a customer service representative about her plan's coverage and was advised that the Mayo Clinic was an "Out-of-Network" or "Non-Participating Provider," so that her coverage would be limited to the out-of-network benefits set forth in the Plan's Schedule of Benefits. Kitterman asserted that she also asked whether or not there were any additional charges besides the "Out-of-Pocket Maximum" for "out-of-network" coverage, but she was simply told to refer to the Plan; she was not told that she would be liable for any amount greater than the "Out-of-Pocket Maximum," nor was "Out-of-Pocket Maximum" or any exclusions from it, defined for her. In the proceedings before me, Coventry did not dispute either the fact or content of the query or the response.

Kitterman reviewed the Schedule of Benefits in her Coventry Health Care Plan booklet, which stated that the "Out-of-Pocket Maximum" for an individual per calendar year for services from a non-participating provider would be $8,000, as compared to $4,000 for services from a participating provider. Kitterman asserted that the Schedule

---

[1] In its decision on the appeal in this matter, the Eighth Circuit Court of Appeals observed that Diane Kitterman's husband, James, was also named as a plaintiff in the state-court petition, but neither the original petition nor any other court filing identified any cause of action that James may have against Coventry. *Kitterman*, 632 F.3d at 446 n.1. Therefore, "for ease of reference," the Eighth Circuit Court of Appeals referred to the plaintiffs collectively as "Kitterman." *Id.* I have adopted the same practice in this decision.

of Benefits does not state or refer to any possible additional costs on either of the first two pages, and that a blank space at the bottom of the second page "does not invite the participant to continue to turn the page." Therefore, she decided that paying the extra $4,000 to treat her suspected ovarian cancer at the Mayo Clinic was worth the additional money, in light of her doctor's recommendation and the avoidance of additional travel time to Iowa City, where a participating provider was located.

There is a third page to the Schedule of Benefits, however, which consists of explanations and definitions of various terms. The two entries on this third page that are most pertinent to the present action are the following:

> <u>Out-of-Network Rate</u>—The Out-of-Network Rate is the maximum amount covered by Us for approved out-of-network services. This rate will be derived from either a Medicare based fee schedule or a percent of billed charges as determined by Us. **You are responsible for Charges that exceed our Out-of-Network Rate for Non-Participating Providers. This could result in you having to pay a significant portion of your claim. Balances above the Out-of-Network Rate do NOT apply to your Out-of-Pocket Maximum.**
>
> <u>Out-of-Pocket</u>—The Individual Out-of-Pocket Maximum is a limit on the amount You must pay out of Your pocket for specified Covered Services in a calendar year, as specified in this Schedule of Benefits. The family Out-of-Pocket Maximum is the limit on the total amount Members of the same family covered under this Agreement must pay for specified Covered Services in a calendar year. Coinsurance and Deductible amounts apply to your Out-of-Pocket Maximum. **Copayments and Charges that exceed our Out-of-Network Rate for Non-Participating Providers do not apply to your Out-of-Pocket Maximum.** You will be responsible for office visit copayments throughout the calendar year.

Administrative Record at 4 (emphasis in the original).

Kitterman was admitted to the Mayo Clinic on September 9, 2008, and released on September 21, 2008. Upon her return home, she received a letter dated September 9, 2008, from Coventry, entitled "Authorization Notification," concerning her anticipated treatment. This letter explained, *inter alia*, that because Kitterman had elected to receive treatment from a non-participating provider, "charges above the Plan's out-of-network rate do not apply toward your out-of-pocket maximums." Administrative Record at 83. Kitterman asserted that this letter, which she received only after she had been treated, provided the first indication that she might owe far in excess of $8,000 for her treatment at the Mayo Clinic.

Kitterman eventually received an Explanation of Benefits (EOB), Administrative Record at 108-09, indicating that the Plan paid $20,670.83 for out-of-network services, out of a total of $44,458.99, and that she was responsible for $23,788.16. Kitterman represented that she paid $8,000 to Rochester Methodist Hospital, but left the remaining $15,768.16 unpaid and accruing penalties and interest.

Kitterman appealed the denial of payment of benefits in excess of the $8,000 Out-of-Pocket Maximum through two levels of administrative appeals with Coventry, but both appeals were unsuccessful. Administrative Record at 91-109 (first-level appeal); 110-20 (second-level appeal). Kitterman then filed this lawsuit in state court, which Coventry removed to this federal district court.

### B. The Prior Proceedings

In proceedings before me, Kitterman asserted that the blank section at the bottom of page two of the Schedule of Benefits "does not invite the participant to continue to turn

the page," so that a reasonable Plan participant would rely on the first two pages of the Schedule of Benefits, which contain no restrictions on medical expenses that apply to the "Out-of-Pocket Maximum." She argued, further, that the only conclusion that an average Plan participant could reach from reviewing the first two pages of the Schedule of Benefits is that Coventry is responsible for all services provided in excess of the "Out-of-Pocket Maximum." She argued that the Schedule of Benefits, as she understood it, was a "Summary Plan Description" (SPD), which is binding over conflicting terms in the Plan, or a "faulty" SPD, which prejudiced her, because she relied upon it to obtain treatment from the Mayo Clinic rather than from a participating provider. Conventry argued that the Schedule of Benefits is three pages long, not two, and that Kitterman could not pick and choose the provisions of the Schedule of Benefits upon which she chose to rely. Coventry asserted that there is no conflict between the Schedule of Benefits and the terms of the Plan, as set out more fully in the Evidence of Coverage, because both make clear that balances above the out-of-network rate do not apply to the participant's "Out-of-Pocket Maximum" for non-participating providers.

I found that the common and ordinary meaning of "Out-of-Pocket Maximum" to a reasonable Plan participant, as Kitterman contended, was the greatest amount that the Plan participant would have to pay for medical services per calendar year, with different amounts specified for the services of participating providers ($4,000 per individual) and for services of non-participating providers ($8,000 per individual). See Schedule of Benefits, Administrative Record at 2. I sincerely doubted that a reasonable plan participant knows that terms that have such an unambiguous common and ordinary meaning can be defined in a contract to mean something entirely different. *Kitterman*, 703 F. Supp. 2d at 907. After reviewing the terms of the Plan, as well as the Schedule of Benefits, I concluded that those terms, including the "does not apply" language in the definition of

"Out-of-Pocket Maximum," were ambiguous and that Coventry's construction irreconcilably conflicted with the common and ordinary meaning of "Out-of-Pocket Maximum." *Id*. at 907-08. Ultimately, I concluded that, giving the "Out-of-Pocket Maximum" language of the Plan its common and ordinary meaning as a reasonable person in the position of the Plan participant, not the actual participant, would have understood the words of the Plan, the "Out-of-Pocket Maximum" identified for either participating providers ($4,000) or non-participating providers ($8,000) is the greatest amount that the Plan participant will have to pay per calendar year for those services. Consequently, in this case, Kitterman was responsible for no more than $8,000 for her services from the Mayo Clinic. *Id*. at 910. I noted that this conclusion made it unnecessary for me to consider whether the Schedule of Benefits or any other document provided to Kitterman was an SPD, let alone whether any such SPD was "faulty," whether the purported SPD was consistent or inconsistent with the terms of the Plan, or whether Kitterman relied on the purported SPD to her detriment. *Id*.

The Eighth Circuit Court of Appeals did not agree with my analysis. That court noted that "both the schedule of benefits and the evidence of coverage provide that charges in excess of Coventry's 'Out–of–Network Rate do NOT apply to' Kitterman's out-of-pocket maximum." *Kitterman*, 632 F.3d at 448. The appellate court also noted that page three of the Schedule of Benefits expressly stated, "You are responsible for Charges that exceed our Out–of–Network Rate for Non–Participating Providers. This could result in you having to pay a significant portion of your claim," and also stated that charges in excess of Coventry's "Out–of–Network Rate do NOT apply to" a claimant's "Out-of-Pocket Maximum." *Id*. It also noted that the Evidence of Coverage warned that capitalized terms had "special meaning" and were specifically defined. *Id*. at 448 n.4. Thus, the Eighth Circuit Court of Appeals concluded,

7

> Read together, these and other provisions in the plan documents temper the effect of the words "Out–of–Pocket Maximum." We therefore conclude that a reasonable plan participant, reviewing the policy as a whole, would understand that out-of-network charges above Coventry's out-of-network rate would not be applied toward satisfaction of the participant's "Out–of–Pocket Maximum."

632 F.3d at 448-49 (footnote omitted). The Eighth Circuit Court of Appeals also rejected my conclusion that the "do not apply" language was ambiguous and that Coventry's construction of that language was irreconcilably contrary to the common and ordinary meaning of "Out-of-Pocket Maximum":

> When read in context with accompanying statements in the plan documents warning that the participant is "responsible for Charges that exceed [Coventry's] Out–of–Network Rate for non-participating providers," which "could result in [the participant] having to pay a significant portion of [the] claim," we believe a reasonable participant would reach only one conclusion: Out-of-network charges above the out-of-network rate may result in out-of-pocket expenditures above the "Out–of–Pocket Maximum."

*Kitterman*, 632 F.3d at 449. The appellate court also concluded that it could not "ignore provisions or rewrite the plan documents to conform with what Kitterman actually read," but "[m]ust consider the documents as an 'integrated whole,' and 'give[] effect' to 'all parts of the contract.'" *Id.* (citations omitted). Ultimately, the appellate court concluded as follows:

> Because we are required to view the plan language in its totality, and because the term "Out–of–Pocket Maximum" is specifically defined not to include out-of-network charges above the out-of-network rate, we conclude that a reasonable plan participant would give the term "Out–of–Pocket Maximum" the meaning ascribed to it by the plan.

*Id.* at 450-51. For these reasons, the Eighth Circuit Court of Appeals "vacate[d] the judgment of the district court and remand[ed] for further proceedings." *Id.* at 450.

### C. *Positions Of The Parties On Remaining Issues*

The Judgment of the Eighth Circuit Court of Appeals was filed in this court on February 16, 2011, *see* docket no. 31, and the appellate court's Mandate followed on March 14, 2011, *see* docket no. 32. Following a telephonic conference with the parties on March 17, 2011, Chief United States Magistrate Judge Paul A. Zoss entered an Order (docket no. 35) directing the parties to file briefs outlining what they believed were the remaining issues for this court to resolve.

In her Brief (docket no. 36), filed April 1, 2011, Kitterman argued that, in light of the decision of the Eighth Circuit Court of Appeals, which remanded "for further proceedings," it was now necessary for me to decide the issues that I did not reach in my decision on the merits: (1) whether the Schedule of Benefits should be deemed a Summary Plan Description (SPD), which would bind Coventry to cover all medical expenses over $8,000, the Out-of-Pocket Maximum for services performed by an out-of-network provider; and (2) if the Schedule of Benefits is not an SPD, whether it is a "faulty" SPD, thus requiring Coventry to pay all medical expenses over $8,000. Kitterman asserted that these issues have already been adequately briefed.

In its Brief (docket no. 37), however, Coventry argued that there is nothing left to decide in this case. Coventry argues that, on appeal, the Eighth Circuit Court of Appeals held that, when reading the definitions of Out-of-Pocket Maximum and Out-of-Network in the Schedule of Benefits, "'a reasonable participant would reach only one conclusion: Out-of-network charges above the out-of-network rate may result in out-of-pocket

9

expenditures above the "Out-of-Pocket Maximum."'" Defendant's Brief at 1 (quoting *Kitterman*, 632 F.3d at 449). Coventry argues that this holding precludes Kitterman's claim, even if the Schedule of Benefits was the SPD for the Plan or was a "faulty" SPD for the Plan, and Coventry argues it was neither. Coventry points out that there is nothing in the Schedule of Benefits that grants a participant a right that the other Plan documents do not, as both the Schedule of Benefits and the Evidence of Coverage provide that charges above the Out-of-Network Rate "do not apply to your Out-of-Pocket Maximum." Any argument that this language entitled Kitterman to additional benefits, Coventry argues, is foreclosed by the appellate court's holding that "'the term 'out-of-pocket maximum' is specifically defined not to include out-of-network charges above the out-of-network rate.'" Defendant's Brief at 2 (quoting *Kitterman*, 632 F.3d at 499). Consequently, Coventry asks me to dismiss this action and enter judgment in its favor.

## II. *LEGAL ANALYSIS*

At the outset, I note that proof that the Schedule of Benefits is an SPD, faulty or otherwise, does not, in and of itself, entitle Kitterman to any relief, as she did not assert a claim for an ERISA disclosure violation. *See Palmisano v. Allina Health Sys., Inc.*, 190 F.3d 881, 888-89 (8th Cir. 1999) (holding that proof that an administrator violated ERISA by failing to provide an SPD or providing only a "faulty" SPD does not entitle a participant or beneficiary to benefits to which he is not entitled under the plan). Rather, to determine whether or not I must now decide whether or not the Schedule of Benefits is an SPD or a "faulty" SPD, as Kitterman contends, I must consider whether such a determination could potentially lead to an award of benefits to Kitterman, notwithstanding the decision of the Eighth Circuit Court of Appeals. That determination, in turn, depends upon the effect of a finding that the Schedule of Benefits is an SPD or a "faulty" SPD.

10

### A. The Effect Of An SPD

The principle on which both parties rely is that, "[a]s a general rule, when the SPD conflicts with the plan it purports to summarize, the SPD provision governs." *Jessup v. Alcoa, Inc.*, 481 F.3d 1004, 1007 (8th Cir. 2007) (citing *Koons v. Aventis Pharm., Inc.*, 367 F.3d 768, 775 (8th Cir. 2004)). As the Eighth Circuit Court of Appeals has explained,

> [T]he policy underlying the "SPD prevails" rule was ERISA's important goal of providing complete disclosure to plan participants, such that where disclosures made in an SPD pursuant to 29 U.S.C. § 1022(a)(1)—which must "be plainspoken for the benefit of average plan participants"—conflicted with "an obscure passage in a transactional document only lawyers will read and understand," the "accessible provisions [in the SPD] govern because adequate disclosure to employees is one of ERISA's major purposes." [*Jobe v. Medical Life Ins. Co.*, 598 F.3d 478,] 483 [(8th Cir. 2010)] (quoting *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 621 (8th Cir. 1998)).

*Ringwald v. Prudential Ins. Co. of Am.*, 609 F.3d 946, 949 (8th Cir. 2010);[2] *see generally CIGNA Corp. v. Amara*, ___ U.S. ___, ___, 131 S. Ct. 1866, 1877 (2011) (the objective of the summary plan description is "clear, simple communication" (citing 29 U.S.C. § 1001(a)). An SPD does not necessarily conflict with the plan simply because it uses

---

[2] As the Eighth Circuit Court of Appeals has recognized, "One context where the rationale behind the rule would be contradicted by a blanket 'SPD prevails' rule, as other circuits have recognized, is the situation involved [in the case before that court] and in *Jobe*, where the SPD purports to enlarge the rights of the plan administrator at the expense of plan participants when the plan itself does not confer those rights." *Ringwald*, 609 F.3d at 949. Neither party asserts that this or any other exception to the general rule that the SPD prevails, when it conflicts with the terms of the plan, is applicable in Kitterman's case.

different language, if it nevertheless incorporates the substance of the plan's more explicit terms. *See Jessup*, 481 F.3d at 1008; *accord Koons v. Aventis Pharm., Inc.*, 367 F.3d 768, 775 (8th Cir. 2004) (the "SPD prevails" rule is qualified, because "'this rule of construction does not apply when the plan document is specific and the SPD is silent on a particular matter'" (quoting *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 952 (8th Cir. 1994)); *see generally Amara*, ___ U.S. at ___, 131 S. Ct. at 1877-78 ("To make the language of a plan summary legally binding could well lead plan administrators to sacrifice simplicity and comprehensibility in order to describe plan terms in the language of lawyers.").

In this case, as Coventry argues, even if the Schedule of Benefits is an SPD, it does not conflict with the terms of the Plan. *Jessup*, 481 F.3d at 1007 (the "SPD prevails" rule applies when the SPD conflicts with the terms of the plan). Nowhere in her Brief (docket no. 36) on remaining issues did Kitterman explain how the Schedule of Benefits "conflicts" with the terms of the Plan with regard to the "Out-of-Pocket Maximum" for services from a non-participating provider. Although Kitterman acknowledged on page 4 of her Brief On The Merits (docket no. 17)[3] that "[t]he Federal Courts have been quite clear in stating that a summary plan description provision prevails if it is in conflict with a provision of the plan," citing *Jensen v. Sipco, Inc.*, 38 F.3d 945, 952 (8th Cir. 1994), she did not explain anywhere in that brief how there is any "conflict" between the terms of the Schedule of Benefits, which she asserts is an SPD, and the terms of the Plan. Instead, her argument on the merits[4] was that average reasonable Plan participants who read the

---

[3] This document is erroneously entitled "Plaintiffs' Request For Enlargement Of Time To File Brief."

[4] Kitterman asserted in her Brief (docket no. 36) on remaining issues that the issues that she contended I must now resolve had already been adequately briefed. Plaintiff's
(continued…)

12

portions of the Schedule of Benefits that she read would believe or understand the "Out-of-Pocket Maximum" to be their absolute limit for the greatest amount that they would owe for services provided in a calendar year, because caveats or limitations were not provided adjacent to the benefit description in the Schedule of Benefits, but on a subsequent page that the reader was not "invited" to turn to, because of a blank space at the bottom of the preceding page. Plaintiff's Brief On The Merits (docket no. 17) at 6-9.

However, the Schedule of Benefits must be considered in its entirety, even if it is an SPD; review is not limited to the parts that Kitterman read. *Cf. Kitterman*, 632 F.3d at 449 (the court could not "ignore provisions or rewrite the plan documents to conform with what Kitterman actually read," but had to "consider the documents as an 'integrated whole,' and 'give[] effect' to 'all parts of the contract'" (citations omitted)). The definition of "Out-of-Pocket Maximum" appears on the third page of the Schedule of Benefits. As the Eighth Circuit Court of Appeals noted, "both the schedule of benefits and the evidence of coverage provide that charges in excess of Coventry's 'Out–of–Network Rate do NOT apply to' Kitterman's out-of-pocket maximum." *Kitterman*, 632 F.3d at 448; *compare* Administrative Record at 4 (portion of the Schedule of Benefits including this language); *with id.* at 13 and 73 (portions of the Evidence of Coverage including this language). Similarly, the definition of "Out-of-Network Rate" in the Schedule of Benefits cautions, **"You are responsible for Charges that exceed our Out-of-Network Rate for Non-Participating Providers. This could result in you having to pay a significant portion of your claim."** Administrative Record at 4 (emphasis in the original). Thus, these portions of the Schedule of Benefits state precisely what the Eighth Circuit Court of

---

⁴(…continued)
Brief (docket no. 36) at 3. Thus, I may properly rely on her Brief On The Merits to address what "conflict," if any, she identifies between the SPD and the terms of the Plan.

13

Appeals concluded that a reasonable participant would understand the Plan terms to be: "Out-of-network charges above the out-of-network rate may result in out-of-pocket expenditures above the 'Out-of-Pocket Maximum.'" *Kitterman*, 632 F.3d at 449. There is no conflict between the terms of the Schedule of Benefits and the terms of the Plan as to "Out-of-Pocket Maximum" for out-of-network services.

Nor would the Schedule of Benefits prevail over the terms of the Plan simply because the Schedule of Benefits may have lacked all of the detail that led the Eighth Circuit Court of Appeals to its final interpretation of the terms of the Plan. *See id.* at 448 (reading together cited terms of the Schedule of Benefits and the Evidence of Coverage "and other provisions in the plan documents" to conclude that "a reasonable plan participant, reviewing the policy as a whole, would understand that out-of-network charges above Coventry's out-of-network rate would not be applied toward satisfaction of the participant's 'Out-of-Pocket Maximum'"). The language of an SPD does not need to match precisely the language of the Plan, although the language of the Schedule of Benefits, the purported SPD here, *does* track the essential language of comparable provisions of the Evidence of Coverage. *See Jessup*, 481 F.3d at 1008; *accord Koons*, 367 F.3d at 775; *see generally Amara*, ___ U.S. at ___, 131 S. Ct. at ___, 79 U.S.L.W. at ___. Kitterman has not demonstrated, and I cannot find, that the Schedule of Benefits, if read in its entirety, fails to incorporate the substance of the Plan's more explicit terms. *See Jessup*, 481 F.3d at 1008.

Thus, whether or not the Schedule of Benefits is an SPD, there is no respect in which the terms of the Schedule of Benefits would "prevail" over the terms of the Plan, because of a "conflict" between them, so that Kitterman would be entitled to additional benefits. Therefore, I need not decide whether or not the Schedule of Benefits is an SPD.

### B. The Effect Of A "Faulty" SPD

Nor is the result any different if the Schedule of Benefits is a "faulty" SPD. A "faulty" SPD is one that does not contain all of the information required by the statute and regulations. *See Antolik v. Saks, Inc.*, 463 F.3d 796, 801 (8th Cir. 2006).[5] What distinguishes a "faulty" SPD claim from an ordinary "SPD prevails" claim is that, "'"to secure relief on the basis of a faulty summary plan description, the claimant must show some significant reliance on, or possible prejudice flowing from the summary."'" *Greeley v. Fairview Health Servs.*, 479 F.3d 612, 614 (8th Cir. 2007) (quoting *Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 984 (8th Cir. 1992), in turn quoting *Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1520 (8th Cir. 1988)); *Koons*, 367 F.3d at 775 ("Reliance or prejudice, however, is not required if the SPD is not 'faulty.'"). However, a "faulty" SPD, like a purported SPD, must still conflict with the terms of the plan to prevail. *See Antolik*, 463 F.3d at 801; *Koons*, 367 F.3d at 775; *Palmisano*, 190 F.3d at 887-88. Here, even if the Schedule of Benefits is a "faulty" SPD, and Kitterman relied upon it (or portions of it that she read), the Schedule of Benefits, read in its entirety, does not conflict with the terms of the Plan. Thus, Kitterman is not entitled to benefits, even if the Schedule of Benefits is a "faulty" SPD, and I need not reach the question of whether the Schedule of Benefits is or is not a "faulty" SPD.

### C. What "Further Proceedings" Are Required?

Because I need not reach the questions that Kitterman contends remain unresolved, the only remaining question is what, if any, "further proceedings" are required on remand?

---

[5] A "hopelessly inadequate" SPD does not trump a conflicting plan provision, because ERISA precludes informal amendments to a plan, by estoppel or otherwise. *Antolik*, 463 F.3d at 801.

I agree with Coventry that the only "further proceedings" required are entry of judgment in Coventry's favor.

### III.  CONCLUSION

After remand from the Eighth Circuit Court of Appeals for "further proceedings," I find that I need not decide either of the questions that Kitterman contends remain to be resolved in light of the appellate court's decision.  Kitterman cannot obtain any relief simply by prevailing on her remaining contentions, that the Schedule of Benefits is an SPD or a "faulty" SPD, because she has not asserted a claim for an ERISA disclosure violation. Moreover, prevailing on her remaining contentions will not result in the award of benefits—the claim that she does assert—because the terms of the Schedule of Benefits do not conflict with the terms of the Plan, as both were construed by the Eighth Circuit Court of Appeals.  Consequently, I need not determine whether or not the Schedule of Benefits is an SPD or a "faulty" SPD, and the only "further proceedings" required are the entry of judgment in Coventry's favor.

THEREFORE, Kitterman's claim for benefits is **denied.  Judgment** in favor of Coventry shall enter accordingly.

**IT IS SO ORDERED.**

**DATED** this 6th day of June, 2011.

                                               */s/ Mark W. Bennett*
                                               MARK W. BENNETT
                                               U. S. DISTRICT COURT JUDGE
                                               NORTHERN DISTRICT OF IOWA